(Decided 19th June, 1872.)

---

THE CHESAPEAKE AND OHIO CANAL COMPANY *vs.* JOHN S. GITTINGS, and others.

## *When a Decree operates as an Estoppel.*

The Chesapeake and Ohio Canal Co., on the 22d of January, 1840, with a view to provide a fund for the redemption of certain canal scrip previously issued by it, executed a deed of trust to G and others, of certain five per cent. sterling bonds of the State of Maryland. In consequence of some objections to this deed the trustees declined to accept the trust, and a new deed was accordingly executed on the 15th of April, 1840,

Chesapeake and Ohio Canal Co. *vs.* Gittings, *et al.*

which was accepted by the trustees. This deed after providing for the sale of the bonds by the trustees, and the payment out of the proceeds thereof, of certain specified canal scrip, further provided that the trustees should, at the end of six months from its date, pay over to the appellant, all money they might then have on hand, and deliver all bonds then unsold. Under this deed, certain sterling bonds of the State of Maryland were delivered to the trustees. On the day of the execution of the second deed, the Ches. and Ohio Canal Co. being indebted to the Alex. Canal Co. in the sum of $17,379.20, executed and delivered to it, its bond payable six months after date, and as a security for its payment, by an order passed on the same day, pledged and set apart any surplus of money or of State bonds in the hands of the trustees under the deed of the 22d of January, 1840, after their trust was closed. On the 24th of June, 1841, the Bank of Potomac as assignee of said bond filed a bill in chancery against the trustees G and others, the Ches. and Ohio Canal Co. and the Alex. Canal Co., to enforce the payment of the same. The bill alleged the execution of the deeds of trust, the acceptance of the latter deed by the trustees, the sale by them of the sterling bonds, and that there remained in their hands under said deed a large surplus after satisfying all the legitimate objects of the trust, which was equally pledged by the Ches. and Ohio Canal Co. to the payment of said bond. The trustees were required to answer under oath all matters touching the administration of the trust; and the bill prayed a decree for the payment by the trustees and other defendants, of the said bond to the complainant. The Chesapeake Bank designated in the deed of trust as the place for the redemption of the canal scrip, was by an amended bill made a party defendant. The trustee G answered admitting the execution of the deeds of trust, the acceptance by the trustees of the deed of the 15th of April, the sale by them of bonds, the proceeds of which, together with certain interest on coupons, amounted to $361,075.88; and claiming credit for disbursements to the amount of $353,777.89, leaving a surplus due the trust fund of $7,297 99. G further answering alleged that finding it impracticable to sell bonds enough for the redemption of the scrip and notes of the canal company, the Chesapeake Bank at his instance and with the knowledge and consent of his co-trustees and the canal company undertook to furnish the necessary funds on a pledge of the bonds, and with their consent the bonds went into the possession of the bank, and the sales were made with its consent, the bank always receiving the proceeds of such sales in lieu of the bonds. That at different times the bank purchased sundry acceptances of the Ches. and Ohio Canal Co. from the holders thereof, which it discounted upon the faith and in reliance that the surplus to come into the hands of the trustees from the sales of the bonds would be chargeable therewith. G denied the power of the Ches. and Ohio Canal Co. to contract the debt for which the bond of $17,379 20 was

Chesapeake and Ohio Canal Co. *vs.* Gittings, *et al.*

executed, and that the same was a lien upon the surplus in the hands of the trustees. The answer of the Chesapeake Bank was substantially the same as that of G. The Ches. and Ohio Canal Co. admitted the execution of its bond for $17,379.20, and the passage of the order pledging the surplus in the hands of the trustees under the deed of the 22d of January, as a security for its payment, but denied that the same was a lien upon the surplus arising under the deed of the 15th of April; it charged that there was a large surplus in the hands of the trustees after satisfying the legitimate objects of the trust, and to this surplus it claimed to be entitled. Proof was taken and BREWER, J., acting as Chancellor, among other things decreed that the Ches. and Ohio Canal Co. had the power to contract the debt for which its bond had been executed, but that in the then state of the pleadings, the complainant was not entitled to the relief prayed. Subsequently the obstacle arising from the condition of the pleadings being removed, the Chancellor, on the 3d of November, 1851, decided that there was a surplus in the hands of the trustees, after satisfying the legitimate objects of the trust, to the amount of $11,960.14, and decreed that the Chesapeake Bank should pay this sum to the complainant, and also deliver to it a sterling bond for £375, which had not been disposed of by the trustees; and further decreed that the sum of $14,780.30, balance due on the bond of $17,379.20, should be paid by the Ches. and Ohio Canal Co. to the complainant. Pending this suit, and after having answered therein, the Ches. and Ohio Canal Co., on the 14th of January, 1842, filed its bill in chancery against the Potomac Bank, the Alex. Canal Co., and the trustees under the deed of the 15th of April, claiming that there was a large surplus in the hands of the trustees after satisfying all the objects of the trust; that the Bank of Potomac was seeking to enforce the payment of the bond of $17,379.20, as a lien upon the same; that the said surplus belonged to the complainant; and an account of the trust was asked for. The answer of the trustee G in regard to the sales of the bonds and the disbursements on account thereof was substantially the same with his answer in the suit of the Bank of Potomac. The Bank of Potomac admitted the assignment to it of the bond of $17,379.20, and that it was seeking to enforce its payment as a lien upon the surplus in the hands of the trustees. On the 28th of October, 1870, a general replication was entered by the Ches. and Ohio Canal Co. The trustee G in his supplemental answer, filed the 25th of January, 1871, relied upon the decree of the 3d of November, 1851, as a bar to the further prosecution of the suit by the Ches. and Ohio Canal Co. HELD:

That the subject-matter of the bill of complaint of the Ches. and Ohio Canal Co. was put in issue and decided in the suit instituted by the Bank of Potomac, and the decree passed in said suit, was an effectual bar to the further prosecution of the suit of the Ches. and Ohio Canal Company.

Chesapeake and Ohio Canal Co. *vs.* Gittings, *et al.*

A decree of a Court of competent jurisdiction is final and conclusive as to all further litigation between the same parties, touching the same subject-matter.

APPEAL from the Circuit Court of Baltimore City.

A general statement of the case will be found in the opinion of the Court. The following Exhibit of the complainant, which was received by its agent from the appellee Gittings, and the agreement of counsel, will further contribute to elucidate the questions discussed :

## EXHIBIT C.

*Chesapeake and Ohio Canal Co. in acct. with Chesapeake Bank and J. S. Gittings, for the Trustees of the Canal Co.*

| 1840. | | | | | DR. |
|---|---|---|---|---:|---:|
| To notes rec'd in May | | | | 63,993 | 90 |
| " | " | " June | | 133,158 | 16 |
| " | " | " July | | 67,182 | 75 |
| " | " | " August | | 17,185 | 95 |
| " | " | " Sept | | 9,756 | 90 |
| " | " | " Oct | | 8,607 | 70 |
| " | " | " Dec | | 2,052 | 60 |
| 1841. | | | | | |
| To notes rec'd in Jan | | | | 973 | 35 |
| " | " | " Feb | | 659 | 20 |
| " | " | " March | | 1,075 | 85 |
| " | " | " April | | 236 | 90 |
| | | | | 304,883 | 26 |
| 1840. | | | | | |
| June 13. | To bill advertising | | | 9 | 50 |
| Dec. 11. | " T. Fillebrown, acc't for services, | | | 45 | 00 |
| | " ints. on over dfts. to 1st Jan | | | 7,342 | 16 |
| | " expenses of J. Swan and Gittings to New York | | | 100 | 00 |
| | " expenses of J. Swan, to N. York, delivering bonds | | | 33 | 30 |
| Am't carried forward | | | | 312,413 | 22 |

Chesapeake and Ohio Canal Co. *vs.* Gittings, *et al.*

| | | | |
|---|---|---|---|
| | Am't brought forward...................... | 312,413 | 22 |
| Dec. 11. | To interest on over drafts, from 1st Jan. to 27th Feb................. | 1,143 | 03 |
| 1841. | | | |
| Jan. 5. | To balance of acct. rendered............ | 4,375 | 63 |
| April 6. | " commission allowed J. Swan and J. S. Gittings...................... | 6,893 | 30 |
| 12. | " C. & O. C. Co's acceptance........ | 27,976 | 53 |
| 21. | " balance................................. | 8,274 | 17 |
| | | 361,075 | 88 |

| | | | |
|---|---|---|---|
| 1840. | | Cr. | |
| May | By sales of sterling bonds, £10,000 to Godfrey, Patterson & Co.... | 38,119 | 00 |
| June 17. | " sales of sterling bonds, £5,000, to Peabody, Riggs & Co........ | 19,111 | 10 |
| 19. | " sales of sterling bonds, £4,000, to J. Ferguson, N. York.......... | 15,466 | 66 |
| July 11. | " sales of sterling bonds, £10,000, to Peabody, Riggs & Co........ | 39,078 | 00 |
| Oct. 5. | " sales of sterling bonds, £6,000, to Hoffman & Co................. | 23,743 | 76 |
| Dec. 28. | " sales of sterling bonds, £15,000, to Peabody, R. & Co............ | 56,543 | 18 |
| 1841. | | | |
| Feb. 27. | " sales of sterling bonds, £40,250, to Oelricks & Lurman.......... | 152,055 | 56 |
| Jan. 19. | " interest on coupons rec'd from comm's of loans ................. | 16,958 | 62 |
| | | 361,075 | 88 |
| April 19. | Balance to Cr............................ | 8,274 | 17 |

(E. & O. E.)      Chesapeake Bank,

         Baltimore, *April 21st*, 1841.

            R. Marshall, *Per Bkr.*

£10,000 Godfrey, Patterson & Co., N. Y.
  30,000 Peabody, Riggs & Co.
   4,000 John Ferguson, of N. Y.
   6,000 Hoffman & Co.
  40,250 Oelricks & Lurman.

£90,250

## AGREEMENT.

The complainant, with a view to narrow the issues in this case, admits all the debits claimed in the account bearing date April 21st, 1841, a copy whereof, marked Exhibit C, is filed with the bill, except the following items:

1. Interest on over drafts to 1st January............$7,342 16
2.  "      "      from 1st Jan. to 27th Feb., 1,143 03
3. Balance of account rendered........................ 4,375 63
4. Chesapeake and Ohio Canal Co. acceptances......27,976 53
5. Balance............................................... 8,274 17

the propriety of and right to which debits it denies, and waives all the allegations in its bill in this case, except such as relate to the above named disputed items, of which items it requires proof. It also waives its allegations with reference to the sales by the trustees of the bonds, and admits all the credits in said Exhibit C, to be correct as therein stated.

John S. Gittings agrees that in view of the aforegoing admission, it shall not be necessary for the complainant, by appropriate proceedings, to make the representatives of James Swan parties to the suit.

The said John S. Gittings also admits that his co-defendant, William Gunton, one of the trustees named in both deeds of trust, filed with the bill as Exhibits A and B, never authorized or sanctioned the payment out of the trust funds in the hands of the trustees, of the canal acceptances, amounting, as claimed in said Exhibit C, to $27,976.53. Also, that an attachment on judgment obtained by P. McLaughlin, against the said Chesapeake and Ohio Canal Company, was issued by said

McLaughlin out of the Circuit Court of the United States for the District of Maryland, on the 4th day of June,. A. D., 1841, and laid in the hands of said John S. Gittings as trustee, under the deed .of trust herein specified; that the same was contested by him, and that the case was twice tried in the said Circuit Court in Baltimore, and once before the Supreme Court of the United States, and was finally settled by judgment in favor of said Gittings, on the 9th day of December, 1856, and that it shall not be necessary to produce a certified copy of the record of said proceedings, but the original papers may be read at the hearing, to have the same effect, and be subject to the same exceptions as a transcript of the record produced by the defendant. Also, that the 12th, 13th and 14th annual reports of the president and directors may, be read from the printed reports, as if filed and proved under the commission by the defendant.

BROWN & BRUNE,
N. & J. P. POE,
*For the Canal Company.*

GEORGE H. WILLIAMS,

January 16th, 1871. . Solicitor for J. S. Gittings.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, ALVEY and ROBINSON, J.

*Frederick W. Brune* and *Philip F. Thomas,* for the appellant, argued upon briefs submitted by them and *Neilson and John P. Poe.*

The consent decree of the 3d of November, 1851, is no bar to this suit.

The Chesapeake and Ohio Canal Company was debtor to the Bank of Potomac for the whole amount of the bond given to the Alexandria Canal Company, and subsequently transferred to said bank — and the decree against it, instead of being for $14,780.30, should have been for $29,414.29.

The fact that the Bank of Potomac was willing to accept a decree against the Chesapeake Bank, against which it had no claim, for a portion of the debt due it by the Chesapeake and Ohio Canal Company, and one against the latter for the balance, and to waive its right to a decree against Mr. Gittings for the surplus of a trust fund set apart for the payment of its claim, seems to us no valid reason why this present complainant, after crediting him with the whole amount actually paid, cannot recover from him the balance of trust funds still in his hands. Certainly this does him no injustice. If the canal company sees fit to allow him, in his account as trustee, a credit for the amount paid to the Bank of Potomac by the Chesapeake Bank, as if paid by him, it is difficult to perceive how he can justly complain.

The decree was a consent decree, binding at most only upon the parties to the agreement under which it was passed; and it should not be so extended as to shield a trustee from the obligation of rendering a full and faithful account of his trust according to the terms of the deed creating it, and thus enable him to retain $40,000 of trust funds, with interest for twenty years.

As between the Bank of Potomac and the Chesapeake and Ohio Canal Company, we might admit that the decree establishes the liability of the latter to the former to the extent of the amount decreed.

But the canal company is not here seeking relief against either the Chesapeake Bank or the Bank of Potomac—but is proceeding in a separate suit against Mr. Gittings, as a trustee, having in his hands unaccounted for a large amount of its funds, entrusted to him for a specific purpose long since answered—and it seems to us wholly immaterial to the proper decision of this case to inquire what kind of claims *other parties* may have against it.

So long as Mr. Gittings has no claims properly pleadable as a set off to the demand of the canal company against him, now at last brought to a hearing, how can it affect this litiga-

tion to know the Chesapeake Bank or the Bank of Potomac has obtained in a different suit a decree against it?

If the canal company were seeking to recover an alleged debt from either of these banks, the decree so entered and held by them might be available as an off-set or counter claim, but upon this proceeding by it against Mr. Gittings, the decree now owned by the Chesapeake Bank should have no more influence than the canal scrip or the canal acceptances that the bank paid such a *high* price for and has held so long.   *Cecil vs. Cecil, et al.,* 19 *Md.,* 78 ; *Alexander vs. Walter, et al.,* 8 *Gill,* 249, 250 ; *Shafer vs. Stonebraker,* 4 *G. J.,* 355, 360 ; *Story's Eq. Pl.,* 791, 793 ; *Seebold vs. Lockner and Wife,* 30 *Md.,* 133 ; *Packet Co. vs. Sickles,* 5 *Wallace,* 592 ; *Washington, Alexandria and Georgetown S. P. Co. vs. Sickles, et al.,* 24 *Howard,* 342.

The canal acceptances amounting to $27,976.53, claimed to belong to the Chesapeake Bank, are not a proper charge upon the trust fund in the hands of the trustees, Swan, Gittings and Gunton.   Because not authorized by the deed of trust.   *Huntt vs. Townsend,* 31 *Md.,* 336 ; *Dolan and Foy vs. Mayor, &c., of Balto.,* 4 *Gill,* 404, 406.

Because such charge was never sanctioned either by Mr. Swan or Mr. Gunton, but was disavowed and repudiated by both.   Because the canal company never authorized such charge by any corporate act whatever, subsequent to the deed of trust, but always protested against it and uniformly refused to make any settlement based upon a recognition of it, except in the single case of the order of the 4th of June, 1841, which was suspended by the stockholders, on the 9th of June, 1841, and on the 14th of July, 1841, was rescinded by the board before any settlement was made.   And with a view to enforce its refusal to submit to such a charge, this suit was brought in January, 1842, and has never been dismissed, discontinued, waived or settled.

Because the Chesapeake Bank was at most a mere depository of the trustees, and neither a fiscal agent nor a pledgee

of the canal company, so as to give any color whatever to its claim to confiscate the surplus of the trust fund in its possession for the payment of the canal acceptances in question. Messrs. Swan and Gunton, two of the trustees, never appointed it such agent or agreed that it should be such pledgee; and Mr. Gittings, without the consent of at least one of them, could not do so himself, if indeed all or a majority might themselves lawfully do so. The deed of trust neither authorized nor contemplated such arrangement, and the canal company is not shown to have ever sanctioned it beforehand—ratified it afterwards, or submitted at any time to Mr. Gittings' pretensions in this particular. But even if Mr. Gittings, with the consent of his co-trustees, had specifically pledged the bonds to the Chesapeake Bank as security for the advances made by it through him to the trustees, this would not authorize him, as trustee, in his account with the canal company to charge the trust funds in his hands with more than the amount of such advances. Nor could the Chesapeake Bank rightfully retain from the trustees the bonds or their proceeds for any other claim it might happen to have against the canal company.

When the advances were repaid, whatever lien the bank might have had upon the bonds or their proceeds was extinguished, and Mr. Gittings, as trustee, in permitting the bank to retain for more than such advances, was guilty of a clear violation of the express provisions of the deed of trust which should make him personally responsible to the complainant.

He does not allege in his answer that the canal company ever agreed that the Chesapeake Bank might reimburse itself for the amount of the acceptances out of the surplus of the trust fund, but simply that it relied upon its right to do so in the absence of any such agreement. And, moreover, the fact asserted by him that when the Chesapeake Bank made the advance of $4,375, it exacted a pledge of such surplus, negatives conclusively all idea that the acceptances were by agreement to be secured in the same manner.

In accepting the pledge and making the advances to the trustees, it must be presumed to have done so with notice of the trust; its president, Mr. Gittings, who claims to have made the negotiations, being one of the trustees; and hence, in the absence of an agreement from the canal company that it might retain for a general balance due it, or for other claims against the company held by it, the bank was bound to pay to *the trustees* the whole balance in his hands after the specific advances were repaid. The trustees could not legally extend the pledge further, and the canal company never made or authorized any pledge at all.

If they did extend it further without the sanction of the Canal Company, and the Chesapeake Bank was thereby prejudiced, they are responsible to it, and cannot shift such responsibility upon the company. If they did not extend it further, then it would be a fraud on them for the bank to retain any more of the trust fund than was required to repay the advances made. In either case the trustees must account to the company according to the true meaning and obligation of the deed of trust, without reference to the claims of the bank against the company.

Assuming the decree relied on to be no bar, and that the defendant, Gittings, cannot set off the acceptances bought by the Chesapeake Bank, the question is, how should the account be stated by the appellant with the trustees? The McLaughlin attachment has been disposed of, and the only enquiries are, what was the amount of the trust fund for which Gittings and his co-trustees were responsible, on the 3d of November, 1851, before the agreement of that date was signed; and what deduction may the trustees claim after, or in consequence of the decree of that date, in favor of the Bank of Potomac, and the agreements and payments connected with it?

The account agreed to by the Chesapeake and Potomac Banks shows a trust fund, admitted to be in the former bank, on November 1st, 1851, of...................................................... $14,633 99

Chesapeake and Ohio Canal Co. *vs.* Gittings, *et al.*

Am't brought forward........................ $14,633 99

In account C, the acceptances are·
credited in that account on 21st
of April, 1841. Adding their
amount ................................ $27,976 53
and interest to Nov. 14th, 1851,
(10 years, 6 months and 24 days,) 17,737 10
                             45,713 63

The sum due November 14th, 1851, is............. $60,347 62
From which deduct then paid........................ 14,633 99

Balance due November 14th, 1851.................. $45,713 63
being the amount of the acceptances, with interest.
Add interest to May 1st, 1872, (20 years, 6 mos.
and 17 days,)........................................ 56,357 15

                             $102,070 78

This shows the sum due by the trustees on the 1st of May, 1872, if no more is credited to them than the amount of the trust fund, acknowledged to be in the Chesapeake Bank, and paid to the Bank of Potomac, under the decree of Judge BREWER.

But if to the balance due on the 14th of November, 1851......................................... $45,713 63

We add interest to the 10th of January, 1852, being 56 days............................... 426 58

                             $46,140 21
And deduct then paid................................ 7,476 37

We have a balance of................................ $38,663 84
which, with interest to May 1st, 1872, (20 years, 3 months and 20 days,)............................ 46,989 40

Makes the sum of ................................ $85,653 24

And shows the amount due to the appellant from the trustees, after crediting them' with the entire amount paid by them, or by their depository through their means by reason or on account of the trust funds received by them under the deed of trust, of the 15th of April, 1840.

If, however, on the amount as above due on the
  14th of November, 1851........................... $45,713 63

We credit the entire claim of the
  Bank of the Potomac, according
  to the statement upon which the
  decree was based, and which, on
  the 1st of November, 1851, was.. $29,414 29
Less then paid........................... 14,633 99
 
                        $14,780 30
Add 14 days' interest to Nov. 14th,    34 51
                                     14,814 81

We shall then have due on November 14th, 1851,
  the sum of............................................... $30,898 82
Add interest to May 1st, 1872, (20 years, 6 mos.
  and 17 days)........................................... 38,093 11

We have the sum of............................ $68,991 93
still due at this last date by the trustees, even if they had been decreed to pay in cash, and had paid the entire claim of the Bank of Potomac as a first lien on the fund.

As it appears, however, that there is a personal judgment against the appellant still open in favor of the Bank of Potomac in its case, for $14,780.30, with interest from November 1st, 1851, which was thus entered up through the coöperation or assent of the said bank and the defendant, Gittings; and it also appears, that for this amount the said bank, as complainant, released or waived its lien on the trust fund and the said Gittings, as trustee, neither the said Gittings, nor the Bank of Potomac, has now any right to rely on said decree or the payments under it, for any larger credit on account of

Chesapeake and Ohio Canal Co. *vs.* Gittings, *et al.*

the trust fund claimed in this suit, than the amount of the trust fund decreed in that case to be paid by the Chesapeake Bank, and actually paid by it, under said decree, in settlement of the claim of the Bank of Potomac, and that the additional sum of $7,476.37, stipulated in the agreement to be paid by the Chesapeake Bank on the 10th of January, 1852, if such payment was then made by it, is to be regarded as a volunteer payment, outside of the decree, and paid according to the agreement, as the consideration for one-half of the decree in favor of the Bank of Potomac against the appellant, personally, which was on such payment to be assigned to the Chesapeake Bank.

In the Court below the appellant, if it had been held entitled to a decree for the amount of the acceptances, with interest, was willing to allow as a credit to the defendant, Gittings, the payment alleged to be made by the Chesapeake Bank in January, 1852, but now the appellant submits the whole question of the liability of the defendant, Gittings, to the decision of this Court, the appellant being still willing to allow any reasonable payments by Mr. Gittings, in defending the McLaughlin suit, in addition to those already claimed and allowed in the foregoing statements.

*George H. Williams*, for the appellees.

By agreement of counsel, January 16th, 1871, so far as figures are concerned, the complainant's dispute involves five debits, and one item of credit in Account Exhibit C. Of these, No. 1, interest on over drafts, $7,342.16, and No. 2, being interest on over drafts also, $1,143.03, are practically abandoned. They are the items of interest which the canal board agreed to allow the bank at six per cent. for the loan.

Item No. 3, being balance of account, $4,375.63, is not only allowed by Judge Brewer, but specially loaned on President F. Thomas' order.

Item No. 4, are the acceptances which Judge Brewer decides could not be set up against the Bank of Potomac, but

admits, as between the Chesapeake Bank and the Chesapeake and Ohio Canal Company, were an equitable set-off. Whether the bonds were pledged with the assent of all the trustees or of the canal company, is unimportant. The canal company reaped all the benefit of saving the bonds from sacrifice by hat act—was previously notified—subsequently ratified it and recognized it by prescribing the rate of interest to be allowed, and giving J. S. Gittings three times as much commission as Swan, for procuring the loan from the bank on such pledge.

The bank advanced its own money (not the canal company's,) to buy the acceptances at par to sustain the credit of the company, and before the complainant can redeem from its own pledgee, it should pay all debts justly due.

Swan's answer also says they were deposited with the bank by direction of the president of the canal company.

The 5th item, the balance, $8,274.17, depends on the credit of $16,958.62 for coupons.

That the trustees (and J. S. Gittings especially) never received this sum, $16,958.62, which the canal company wants to pocket twice, is thus manifest.

The canal company directed them not to be delivered to the trustees.

In obedience to that order the commissioner of loans of the State of Maryland, paid the amount of the coupons to the Chesapeake Bank, where the canal company kept its bank account, and they were passed to its credit in said account.

And the canal company so understood that these coupons did not pass; they allowed two per cent. commission, $6,893.30 on $344,117.26, the amount of the sale of the bonds, specially excluding the $16,958.62 of coupons.

If these coupons had been deemed to have passed to any or all of the trustees, as part of the trust, the commission would have been two per cent. on the amount, or $339.17 additional.

In fact the account, Exhibit C, of April 21st, 1841, shows that the trustees did not then pretend to have received these coupons, nor the Chesapeake and Ohio Canal Company, that they had been received. On the contrary their instructions were obeyed, and they went to their credit in their own bank account. If the trustees are made to pay them again, Mr. Gittings will pay them the same amount twice, for obedience to instructions, (or rather they will receive it twice,) and on a sum too, on which he has been allowed no commission as trustee, upon the theory that it never came to his hands as such, or in fact came into his hands in any way. The persistence in this demand has always been, and still is, a mystery to the appellee.

The decree was in no sense a consent decree. In a sharply contested case, in which the canal company was represented in Court by able counsel, Judge BREWER not only delivered a lengthy opinion on the 27th of June, 1851, but subsequently, 3d of November, 1851, decrees " the cause being again submitted and considered."

That the Bank of Potomac and Chesapeake Bank assented to the decree, and adjusted ' their strife in consequence of Judge BREWER's opinion and decree, was true; but all was done in reference to the probability of an appeal therefrom by the canal company.

That there was any secrecy about this decree, is not only not proved, but it is submitted that the canal company does not desire gravely so to reflect upon its eminent counsel who filed its answer in the cause—an answer most hostile to the pretensions of all the other parties to the cause; nor are suitors to be indulged in saying, twenty years after a decision of record, that a decree in a cause in which they were in Court by counsel, docketed and filed, was in any sense a matter of secrecy.

Could it be gravely asserted that in a four or five-sided controversy, conducted, as will appear by Judge BREWER's opinion, in the most hostile manner, and by six or seven of

the most eminent lawyers of their day, any decree therein could be a secret matter? In fact, was not the assent of record the surest notice and highest evidence of publicity?

After the notice by Janney's letter, 25th of September, 1840, of the claim of the Alexandria Canal Company, and the McLaughlin attachment, the 4th of June, 1841, neither the trustees nor the bank could pay over until the canal company settled its dispute with those parties, and as these suits were resisted for the benefit of and in accordance with the positions taken by the canal company, of course the trustee is to be allowed for his expenses.

The acceptances—any discussion about them is an amateur question. Strike out as against Mr. Gittings any liability for coupons which he did not receive, and allow the claim of the Bank of Potomac against the canal company, as Judge BREWER decreed, and there is nothing to dispute about.

Thus—Bonds sold...................................... $344,117 26
         Scrip paid...................................... 305,225 88

                                                            $38,891 38

*Conceded allowances:*

| | | |
|---|---|---|
| Advertising, $9.50, Fillebrown, $45.. | $54 50 | |
| Interest, $7,342.16, $1,143.03......... | 8,485 19 | |
| Exps. Swan and Gittings to N. Y..... | 133 30 | |
| Over-draft................................. | 4,375 63 | |
| Commissions......................... | 6,893 30 | |
| Bill for writing sterling bond.......... | 25 00 | |
| Fees to Glenn, etc....................... | 600 00 | |
| | | 20,566 92 |

         Balance......... .............................. $18,324 46

Bond of the Alexandria Canal Company......... 17,379 20
Interest from April, 1840, to 1st Nov., 1851,
   the date of Judge BREWER's decree........... 12,035 09

         Am't carried forward....................... $29,414 29

Chesapeake and Ohio Canal Co. *vs.* Gittings, *et al.*

| | | |
|---|---:|---:|
| Am't brought forward...................... | $29,414 | 29 |
| Deduct.................................................. | 18,324 | 46 |
| Short...................................................... | $11,089 | 83 |
| Actual cash payments by the Chesapeake Bank, on account of Canal Company, to Bank of Potomac.............. ................................. | $11,960 | 14 |
| And...................................................... | 7,390 | 15 |
| Actually paid........................................ | $19,350 | 29 |
| Deduct.................................................. | 18,324 | 46 |
| Short...................................................... | $1,025 | 83 |

Though the suit of McLaughlin did not, technically, make the canal company a party, yet it was an attachment against their funds, detained them so long as it lasted, and the canal company, under the attachment system, could have come into the case, having knowledge of it, and were bound by its result.

But the conclusive answer to this whole matter is, that it is *res adjudicata.*

The same surplus, arising from the same bonds, under the same trust, and what it amounted to, who had it, and who should and ought to have it, was struggled for by the Bank of Potomac and the Chesepeake Bank, and denied by the canal company to belong to any one but itself; the amount of allowances out of it to the trustees, and specially the amount of responsibility of J. S. Gittings, were the very issues before Judge BREWER—were the very matters involved before and passed upon by him, and conclusively settled by him twenty years ago by his decree.

Not one single new thing is or can be brought up in this case, and which was not a matter of special controversy in the former. The matters were not only adjudged, but all anterior equities prior to the decree were foreclosed. *Buch-*

*anan vs. Lorman,* 3 *Gill,* 80; *Boulden vs. Lanahan,* 29 *Md.,* 210; *McKenzie vs. B. & O. R. R.,* 28 *Md.,* 174; *Barrs vs. Jackson,* 1 *Phillips,* (19 *Eng. Chy. R.,*) 582; *Lovejoy vs. Murray,* 3 *Wallace,* 19; *Cecil vs. Cecil,* 19 *Md.,* 78; *Aurora City vs. West,* 7 *Wall.,* 102; *Beloit vs. Morgan,* 7 *Wall.,* 622.

And a judgment of a Court of competent jurisdiction is final, not only as to the matter actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided. *Boulden vs. Lanahan,* 29 *Md.,* 210; *Henderson vs. Henderson,* 3 *Hare,* 114; *Packet Co. vs. Sickles,* 5 *Wallace,* 592; 1 *Greenleaf on Evidence,* secs. 531, 532.

ROBINSON, J., delivered the opinion of the Court.

On the 22d of January, 1840, the Chesapeake and Ohio Canal Company, the appellant in this case, with a view to provide a fund for the redemption of certain canal scrip previously issued by it, executed in pursuance of an order of its board of president and directors a deed of trust to James Swan, John S. Gittings and William Gunton, of certain five per cent. sterling bonds of the State of Maryland, which had been authorized to be given to the company, by the Act of 1838, ch. 386.

In consequence of some objections to the details of this deed, the trustees declined to accept the trust, and accordingly on the 15th day of April, 1840, a new deed of trust, conveying the same bonds to the same trustees, upon somewhat different conditions suggested by them, was prepared and executed by the company, and accepted by the trustees.

The deed provided, among other things, that the bonds should be sold by the trustees and the proceeds applied within six months from the date thereof, to the payment, in the mode therein pointed out, of the canal scrip described in a schedule appended to the deed. It also contained a provision that the trustees should, at the end of six months from its date, pay over to the appellant, all money they might then

have on hand, and deliver all bonds then unsold, whether all the scrip was redeemed or not. Under this deed five per cent. sterling bonds of the State of Maryland, amounting to £90,625, were delivered to the trustees.

On the day of the execution of the second deed, to wit: on the 15th of April, 1840, the appellant being indebted to the Alexandria Canal Company in the sum of $17,379.20, executed and delivered to it its bond payable six months after date; and by an order passed on the same day, the Chesapeake and Ohio Canal Company, pledged and set apart any surplus of money or State bonds in the hands of the trustees, under the deed of January 22d, 1840, after their trust was closed, as a security for the payment of said bond to the Alexandria Canal Company.

On the 24th of June, 1841, the president and directors of the Bank of Potomac being the assignees of said bond, filed a bill in the High Court of Chancery, against the *trustees, Swan, Gittings and Gunton, the Chesapeake and Ohio Canal Company, and the Alexandria Canal Company,* for the purpose of enforcing the payment of the same. In this bill they alleged the execution of the deeds of trust of the 22d of January and the 15th of April, the acceptance of the latter by the trustees, the delivery to and the sale by them of the sterling bonds, and it further charged that there remained in the hands of the trustees under said deed, a large surplus after satisfying all the legitimate objects of the trust, which was equitably pledged by the order of the Chesapeake and Ohio Canal Company, passed on the 15th of April, for the payment of said bond.

The trustees were required to answer under oath all matters touching the administration of the trust—the sale of the bonds—the disbursements of the proceeds, together with the vouchers thereof, and the bill prayed a decree for the payment by *the trustees* and *other defendants*, of the bond assigned to the complainants by the Alexandria Canal Company.

By an amended bill the Chesapeake Bank, designated in the deed of trust as the place for the redemption of the canal scrip, was also made a party defendant.

John S. Gittings in his answer admits the execution of the deeds of January 22d and April 15th, the acceptance by the trustees of the latter deed, the delivery to the trustees of the bonds, the sales thereof to the amount of $344,117.26, together with the sum of $16,958.62 interest on coupons received from the commissioners of loans, thus making $361,075.88, and claims credit for disbursements on account of the same, the sum of $353,777.89, leaving a surplus due the trust fund of $7,297.99.

For further answer he says, that finding it impracticable to sell bonds enough for the redemption of the scrip and notes of the canal company, as presented to the trustees at the Chesapeake Bank, the said bank, at his instance, and with the knowledge of the canal company and his co-trustees, undertook to furnish the necessary funds, on a pledge of the bonds conveyed by the deed of April 15th, and that in pursuance of this agreement the bonds then in the hands of the trustees were delivered to the bank. That the subsequent sales of the bonds were made with the consent of the bank, the latter, however, always receiving the proceeds of such sales, in lieu of the bonds; that at different times in the year 1840, and prior to notice of the assignment of the bond of $17,379.20, which the complainants seek to enforce, the Chesapeake Bank purchased of the holders thereof sundry acceptances of the Chesapeake and Ohio Canal Company, to the amount of $26,402.00, the said acceptances being for work done by contractors on the canal; that at the time of the purchase of said acceptances, the bonds assigned in trust were in the possession of the bank; that they were discounted upon the faith and in the reliance that the surplus to come into the hands of the trustees from the sales of the bonds would be chargeable therewith; that the bank had also loaned the Chesapeake and Ohio Canal Company $5,000 upon the pledge by the

latter, that the same should be paid out of said surplus, and that upon these and other grounds the Chesapeake Bank claims to retain out of said surplus funds the loan of $5,000, and also the amount of the acceptances purchased as aforesaid.

The respondent denies the power of the Chesapeake and Ohio Canal Company to contract the debt for which the bond of $17,379.20 was executed, and denies that the same is a lien upon the surplus in the hands of the trustees. The exhibits, filed as part of the answer show that the sales of the bonds realized $344,117.26, which, together with $16,958.62 received as interest on coupons, makes the sum of $361,075.88 due the trust fund, and the disbursements on account of same, for canal scrip redeemed $305,225.88, cash loaned $4,375.63, acceptances $27,976.53, making $353,777.89, leaving a surplus due the trust fund of $7,297.99.

The answer of the Chesapeake Bank is substantially the same as that of Mr. Gittings.

The Chesapeake and Ohio Canal Company admits the execution of its bond of $17,379.20 to the Alexandria Canal Company—the order of the 15th of April passed by its president and board of directors, pledging the surplus in the hands of the trustees, under the deed of January 22d, as a security for the payment of said bond, but denies that the same is a lien upon the surplus arising under the deed of April 15th; admits the delivery to and sale by the trustees of the sterling bonds, and charges that there is a large surplus in the hands of the trustees, after satisfying the legitimate objects of the trust, to which said surplus it claims to be entitled.

Proof was taken, and at the March Term, 1851, the case was argued and submitted to Judge BREWER, sitting as Chancellor, who decided:

1. That the Chesapeake and Ohio Canal Company had the power to contract the debt, for which its bond of $17,379.20 had been executed to the Alexandria Canal Company.

2. That the object of the order of April 15th was to create a lien upon the surplus in the hands of the trustees for the

payment of said bond, but that this lien could not be asserted in the then state of the pleadings, inasmuch as the bill relies upon the order of *the 15th of April,* which only pledges the fund under the *deed of January 22d,* while the fund held by the trustees arose under the *deed of April 15th.*

3. That the Chesapeake Bank had the right to retain out of the suplus an amount sufficient to pay the loan of $4,375.63.

4. That as against the complainants, assignees for a *bona fide* consideration, the bank had no right to retain out of the surplus the amount of acceptances purchased by it.

The complainants, not being entitled to the relief prayed in the then state of pleadings, filed an amended bill, and at the September Term, 1851, the Chesapeake Bank and John S. Gittings having withdrawn their exceptions to the insufficiency of the averments in the original bill, the amended bill was dismissed and the case again submitted to the Chancellor, and on the 3d day of November following a decree was passed by which it was ordered, adjudged and decreed that the *Chesapeake Bank* should pay to the complainants the sum of $11,960.14, and also to deliver to them a sterling bond of the State of Maryland for £375, being one of the bonds conveyed by the deed of trust, but not disposed of by the trustees.

It was further decreed that the *Chesapeake and Ohio Canal Company* pay to the complainants the sum of $14,780.30.

Whilst the above suit was pending, and after having answered thereto, the Chesapeake and Ohio Canal Company, on the 14th of January, 1842, filed in the High Court of Chancery a bill of complaint against the *Bank of Potomac,* the *Alexandria Canal Company,* and the *trustees under the deed of April the 15th,* claiming that there was a large surplus in the hands of the trustees after satisfying all the objects and purposes of the trust; that the Bank of Potomac, as assignee of the Alexandria Canal Company, was seeking to enforce the payment of the bond of $17,379.20 as a lien upon the same; that the said surplus belonged to the complainant, and praying for an account of the trust, &c.

The answer of John S. Gittings and the exhibits filed therewith in regard to the sales of the bonds, and the disbursements on account thereof, are substantially the same as filed in the suit of the Bank of Potomac.

The Bank of Potomac admits the assignment of the bond of $17,379.20, and that it is seeking, as assignee, to enforce the payment of the same, as a lien upon the surplus in the hands of the trustees.

No further proceedings were taken in the case until the 28th of October, 1870, nearly *twenty-seven years* after the above *answers were filed,* and *nineteen years* after the *final decree* in the *case of the Bank of Potomac,* when a general replication is entered by the present solicitors for the complainant.

The appellee, Gittings, in his supplemental answer relies upon the decree passed on the 3d of November, 1851, in the case of *The Bank of Potomac,* and to which the complainant was a party, as a bar to the further prosecution of this suit.

It is conceded that a judgment of a Court of competent jurisdiction is final and conclusive as between the parties thereto in regard to the subject-matter therein litigated and decided. The question then narrows itself down to this, was the *subject-matter of this bill of complaint in issue and was it decided in the case of the Bank of Potomac?* The pleadings, proof and proceedings settle this question beyond all controversy. In *that suit* as in *this,* the *whole administration of the trust* created by the deed of April 15th, the sales of the bonds, the disbursements on account of the same, the surplus, if any, in the hands of the trustees, the rights respectively of the Chesapeake and Ohio Canal Company and the Bank of Potomac, as assignee of the Alexandria Canal Company, to this surplus, in a word *all matters touching the trust* and the *rights of the several defendants in regard to the same, were in issue,* and the Court by its decree of November 3d, decided that there was a *surplus* in the hands of the *trustees* after satisfying the legitimate objects of the trust to the amount of $11,960.14, and that said surplus should be paid to the Bank

of Potomac, as assignee of the bond of $17,379.20, executed by the Chesapeake and Ohio Canal Company to the Alexandria Canal Company, and it was further decided that the sum of $14,780.30, the balance due on said bond, after deducting therefrom the aforesaid payment and a sterling bond of £375, which had not been disposed of, should be paid by the Chesapeake and Ohio Canal Company, the complainant in this suit. This judgment was rendered *in a cause* to which the *appellant was a party,* and from which it had the *right of appeal,* and in regard to the *same subject-matter involved in this case,* and we are of opinion therefore that it operates as a bar to the further prosecution of this suit. There is nothing on record to show that this was a consent decree, passed at the instance of the Bank of Potomac and Chesapeake Bank, and without the knowledge of the appellant. There was an agreement signed by the solicitors, by which the money paid by the Chesapeake Bank was to be returned, if the Chesapeake and Ohio Canal Company appealed from the decree, thus showing that parties litigant, contemplated at that time, that such action might be taken by the present appellant. No appeal however was taken and no further steps were taken to prosecute this suit, until nearly twenty years after the date of said decree. We cannot escape the conclusion that this complainant, together with the other parties to the suit of the Bank of Potomac, considered that decree as *virtually deciding all matters growing out of the trust created by the deed of April 15th.* Be that however as it may, we are of opinion that said decree is a bar to the further prosecution of this suit.

*Decree affirmed.*

(Decided 19th June, 1872.)